Argued February 20, affirmed March 19, 1929.

# HULDA LUELLA BARNES *v.* MARCUS LANDON LEE.

(275 Pac. 661.)

For appellant there was a brief and oral argument by *Mr. Philip Hammond.*

For respondent there was a brief over the names of *Mr. John P. Hannon* and *Mr. J. J. Fitzgerald,* with an oral argument by *Mr. Hannon.*

McBRIDE, J.—1, 2. We refrain from a consideration of the testimony brought out in this case, as it would serve of no useful purpose, and, in our opinion,

there is only one question to be settled and that is, under all considerations, what is best for the child? We do not feel ourselves bound by the decree of the Oklahoma court in either of the proceedings mentioned, as neither was final, but in both instances the custody was only granted "subject to the further order of the court," and, while the judgment is a finality, which the courts of this state must respect as to the divorce, it is not such a final judgment as the courts of this state are bound to carry out as to the custody of the child. In any event, such a decree is only advisory.

3. A decree in a divorce proceeding, which grants to one of the parties the custody of a child subject to the further order of the court, while it may be a final decree for the purposes of an appeal, is not a final decree within the "full faith and credit" clause of the Constitution of the United States, so far as the question of custody is concerned, when raised in a state other from that in which the decree was rendered.

In the case of *Griffin* v. *Griffin*, 95 Or. 78, 84 (187 Pac. 598, 601), Justice BEAN, speaking for the court, remarks: ·

"A judgment or decree of a court of one state awarding the custody of minor children in a divorce case is not *res judicata* in a proceeding in a court of another state, except as to facts and conditions before the court upon the rendition of the former decree. As to facts and conditions arising subsequently to such an award, the decree has no extraterritorial force and the courts of other states are not bound thereby. A decree of a court of one state ordering the custody of a child is not binding upon the courts of another state under the full faith and credit clause of the Federal Constitution after the child has become domiciled in the latter state. Such a decree as to a

child has no extraterritorial effect beyond the borders of the state of its rendition. The courts of the second state will not remand the child to the jurisdiction of another state, especially where it is against the true interests of the child. The reason given for this rule is the fact that the children are the wards of the court and the right of the state rises superior to that of the parents. Therefore, when a child changes his domicile from one state to another and becomes a citizen of the second state, he is no longer subject to the authority and supervision of the courts of the first state: 15 R. C. L., p. 940, § 417.''

The case last above cited, is very similar to the case at bar, and the exhaustive opinion of Justice BEAN applies to many of its phases. See, also, Bishop on Marriage & Divorce, Vol. 2 (5 ed.), § 204.

4, 5. When we come to the real question in the case, as to what would be best for the interests of the child, we give great weight to the opinion of the learned trial judge, who heard this case with great patience and with evident sympathy for both parties, and, as a result, determined that the interests of the child would be best subserved by leaving her in her present custody. Both parties appear to be capable of properly educating and taking care of the child. Both parties are much attached to her, and, while it is evident that the plaintiff here was in fault, very greatly and gravely in fault, by pursuing a course of conduct which necessitated her husband in bringing suit for divorce, we are of the opinion that such indiscretions, as were chargeable to her at that time, have been atoned for by several years of good conduct. But to take the child away from the father, who was never in fault, and give her to the mother, whose conduct caused the separation, all things being equal, would be an injustice.

6. There was no disobedience of the order of the Oklahoma court in Lee's coming to this state and bringing the child with him, as long as there was no provision in the order that she was not to be taken from the state. Concerning this feature of the case, in *Stetson* v. *Stetson*, 80 Me. 483, 485 (15 Atl. 60, 61), it is said:

"That the result of the decree may cause the removal of the child beyond the limits of the state, is not of itself an objection. This may be the effect in any case. Though the parent receiving the custody may at the time be a resident within the state, there is no authority except in cases of crime, to prevent an immediate removal."

Although the foregoing may be stating the rule rather strongly, we are clearly of the opinion that, unless either the terms of the decree or its necessary implication forbids the removal of the child from the state, there is no violation of the order.

A review of the evidence in this case would consume time and would have a tendency to open old wounds, which time should cover in oblivion, and their discussion would be of no value to anybody.

Taking the case as a whole, we are of the opinion that the decree of the Circuit Court is correct, and it is therefore affirmed.                          AFFIRMED.

COSHOW, C. J., and RAND and ROSSMAN, JJ., concur.