Argued March 19, reversed April 16, 1970

MILLER, *Respondent, v.* SHUFELDT, *Appellant.*

467 P2d 971

Philip Hayter, and Hayter, Shetterly, Noble & Weiser, Dallas, for appellant.

No appearance for respondent.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

LANGTRY, J.

Defendant father of two children appeals from a judgment "sustaining" plaintiff's writ of *habeas corpus*, requiring relinquishment of their children by the defendant to the plaintiff mother.

The parties were divorced by a 1965 Oklahoma district court decree which gave custody of the children to the defendant. Defendant subsequently remarried and he and the children became and remained Oregon domiciliaries for nearly two years. Plaintiff appeared in the Oklahoma court of original jurisdiction in 1967 seeking a change of custody. She was given temporary custody, ex parte, and a date was set for hearing. The Oklahoma attorney who had represented defendant in the original divorce proceeding was mailed a notice of the impending custody hearing. Defendant was not served, although his address was known to plaintiff. Defendant did not appear at the hearing, but defendant's former Oklahoma attorney appeared and informed the court that he no longer represented defendant. The court then specifically allowed him to withdraw and proceeded with the hearing which resulted in the order for the transfer of custody from defendant to plaintiff. Thereafter, on the basis of the Oklahoma court order, plaintiff commenced this *habeas corpus* proceeding in Oregon. The trial court found that the order changing custody was

entitled to full faith and credit in Oregon. On this basis alone, the court rendered the judgment from which this appeal was taken, although it had heard extensive testimony as to fitness of the respective parents to have custody.

The trial court was of the opinion that 12 Okla St Anno, § 1113, which provides that service of notice of motions may be made on a party's attorney of record, was sufficient to confer jurisdiction to change custody on the Oklahoma court. We think on the facts of this case this conclusion is incorrect.

The defendant remained in contact with his Oklahoma attorney after the divorce and before he moved from Oklahoma—in fact, he testified that the attorney accompanied him when he appeared before the judge and obtained verbal permission to move the children to Oregon. The attorney had defendant's Oregon address, and he notified defendant when the notice for the hearing was mailed to him. Defendant then obtained an Oregon attorney who talked by telephone with the Oklahoma attorney. These facts are some indication of a continuing attorney-client relationship, but the Oklahoma court itself recognized that the defendant's former counsel no longer represented him when it allowed that attorney to withdraw. In addition to allowing defendant's former attorney to withdraw, the Oklahoma court order allowing the withdrawal recited that there was "no appearance" at that time for defendant. The two-year lapse between the divorce decree and the change of custody motion militates strongly against holding that there was a continuing attorney-client relationship.

■ The undisputed evidence in the *habeas corpus* hearing in the lower court was that the defendant had

terminated his and the children's Oklahoma domicile about two years earlier, and established a new one in Oregon. In *Scarth v. Scarth,* 211 Or 121, 315 P2d 141 (1957), the court said that under such circumstances there would be serious practical difficulties if the law were that there is a continuing attorney-client relationship. The court said that the question is one of reasonable notice, not one of jurisdiction in the strict sense, and it held that notice to the attorney is sufficient only if *he is the attorney of record and he is still representing the party.* In this case, although he was still the attorney of record, we do not think the facts support a finding that the Oklahoma attorney was still representing defendant.

The *Scarth* case notes a split of authority on similar questions in domestic relations cases. It points out that some cases, like *Scarth,* involved only support money, and others involved custody of children.

A case on all fours with the case at bar, even to the respective states of litigation and domicile of the parties and to service of notice upon and appearance by defendant's former attorney in the Oklahoma court after defendant had removed his and the child's domicile to Oregon, was decided by the Oregon Supreme Court in 1929. *Barnes v. Lee,* 128 Or 655, 275 P 661. The trial court in *Barnes* refused full faith and credit to the change of custody order by the Oklahoma court. The Supreme Court affirmed. *Barnes* was not considered in *Scarth,* supra, although both cases cite *Griffin v. Griffin,* 95 Or 78, 187 P 598 (1920). *Barnes* was not cited to us, and apparently was not cited to the trial court.

█ After divorce, the domicile of the parent having legal custody of the children is the children's domi-

cile. *Griffin v. Griffin,* supra; *In re Hughes,* 73 Ariz 97, 237 P2d 1009 (1951); *Clark v. Jelinek,* 90 Idaho 592, 414 P2d 892 (1966).

*May v. Anderson,* 345 US 528, 73 S Ct 840, 97 L Ed 1221 (1953), followed in *Armstrong v. Manzo,* 380 US 545, 85 S Ct 1187, 14 L Ed 2d 62 (1965), holds that a parent may not have his right to immediate care and custody of his child cut off unless the court so ruling has *in personam* jurisdiction. 345 US at 533. The court in that case, in Footnote 7, said the rule is that in the event of the separation of parents, "the domicile of the children is that of the parent with whom they live and that only the state of that domicile may award their custody ＊ ＊ ＊."

Special considerations may apply where a parent leaves a jurisdiction for evasive purposes. *May,* supra. In the case at bar, some of the evidence leaves a question as to whether defendant may have left Oklahoma for such purposes, but it was overcome by the unchallenged evidence that defendant went to the judge and received permission to leave Oklahoma. The divorce decree did not require this of him, in any event, and *Barnes,* supra, holds that in the absence of such a requirement he was free to remove the domicile of the child from Oklahoma.

Appellate court decisions are legion in which questions like this one have been decided. Often, there are important differences in the fact situations which bear upon the decision. Three cases (besides *Barnes,* supra, which is in point) in which courts rejected *habeas corpus* on facts quite similar to the instant case, influence our decision. *Griffin v. Griffin,* supra; *In re Hughes,* supra; and *Hodgen v. Byrne,* 105 Colo 410, 98 P2d 1000 (1940).

Reversed, and the writ is dismissed.