**ROSENBERGER v. ROSENBERGER.**

No. 6980.

United States Court of Appeals for the District of Columbia.

Decided Jan. 24, 1938.

---

350

Godfrey L. Munter and Confer G. Bailey, both of Washington, D. C., for appellant.

Robert H. McNeill and Bradford Ross, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice and STEPHENS and MILLER, Associate Justices.

MILLER, Associate Justice.

In February, 1934, in a suit brought in the Superior Court of Buncombe County, North Carolina, in the name of Betty Sue Rosenberger, an infant, by her mother, appearing as her next friend, an order was entered requiring her father, Raymond J. Rosenberger, the defendant therein, to pay into the office of the clerk of that court for her support the sum of $6.25 per week, until otherwise ordered. The order further recited that the cause was retained by that court for further orders. At that time all the parties were residents of North Carolina. The weekly payments were thereafter regularly and fully made.

In February, 1937, the infant and her mother were still residents of North Carolina, but in the meantime the father had become, and was then, a resident of the District of Columbia. At that time Betty Sue—the appellee herein, by her mother, as next friend—filed a bill in the United States District Court for the District of Columbia praying that defendant, her father (the appellant herein), be required to show cause why he should not pay an increased amount for her support and education. This special appeal was allowed from an order overruling defendant's motion to dismiss.

The liability of the father to support his minor child is not involved in this appeal, the sole issue being whether the courts of the District may exercise jurisdiction over a cause involving the same subject-matter and the same parties as were involved in the North Carolina cause, and over which that court by its decree specifically retained jurisdiction.

The general rule is that the authority of the court which first takes control of the subject-matter of litigation continues until it has finally and completely disposed of the matter, and no court of coordinate authority is at liberty to interfere with its action. Frazier v. Frazier, 61 App.D.C. 279, 61 F.2d 920, and cases there cited. See, also, Michigan Trust Co. v. Ferry, 228 U. S. 346, 33 S.Ct. 550, 57 L.Ed. 867; Slack v. Perrine, 9 App.D.C. 128, 153.[1] Cf. dissenting opinion by Stone, J., Yarborough v. Yarborough, 290 U.S. 202, 213, 54 S.Ct. 181, 185, 78 L.Ed. 269, 90 A.L.R. 924.

Therefore, by retaining the cause for further orders, the North Carolina court maintained its jurisdiction over the parties and subject-matter of the proceeding. It had authority to modify existing orders or enter new ones, respecting the support and care of the appellee, and to enforce such orders. The removal of the father's residence to the District of Columbia and the appellee's action in filing suit there did not oust the North Carolina court of its jurisdiction. Slack v. Perrine, supra, 9 App.D. C. 128, at page 155. See, also, Michigan Trust Co. v. Ferry, supra; Burrowes v. Burrowes, 64 App.D.C. 392, 78 F.2d 742.

There is a well recognized exception to the general rule, however, in cases involving the custody of infants, namely, that where an infant is physically within

---

[1] Wedderburn v. Wedderburn, 46 App. D.C. 149, 153, relied on by appellee, supports the general rule; the District of Columbia court in that case, being the first to take jurisdiction of the custody of the child. The Virginia court never attempted to take jurisdiction of her. We said in that case: "When, therefore, appellant filed his suit for divorce in Virginia he already had litigated in this jurisdiction the question of the custody of his child." No question of conflict of jurisdiction, therefore, was actually involved.

the jurisdiction of a court of another state, that court will extend its arms to protect it from injury and contamination, even to the extent, if necessary, of taking it from the custody of guardian or parent. Slack v. Perrine, supra, 9 App.D.C. 128, at pages 154, 160; Heavrin v. Spicer, 49 App.D.C. 337, 265 F. 977; Burrowes v. Burrowes, supra; Church v. Church, 50 App.D.C. 237, 270 F. 359; Laumeier v. Laumeier, 237 N.Y. 357, 365, 143 N.E. 219, 221, 32 A.L.R. 654. The rule is stated in Restatement, Conflict of Laws (1934) § 148, as follows: "In any state into which the child comes, upon proof that the custodian of the child is unfit to have control of the child, the child may be taken from him and given while in the state to another person."

■ The appellee relies upon the exception just noted, but it has no application in this case. It is true that in our earlier decisions we have said that when the matter of custody has been adjudicated by the court of another jurisdiction, it is necessary—in order to warrant the taking of jurisdiction by the courts of the District— that the circumstances which existed at the time of such adjudication should have changed. Church v. Church, Burrowes v. Burrowes, Heavrin v. Spicer, all supra. We did not rule, however, that whenever the circumstances should have changed, the court which had first taken control and still retained it should be ousted of its jurisdiction.

The statements which appear in the earlier cases had in mind exceptional circumstances, involving fitness of the custodian or otherwise threatening immediate danger to the life, health, morals or welfare of the child and calling for emergency action by the courts of the District—on the theory that the courts of first control were powerless to afford the protection which was immediately necessary, and that the child being at least temporarily in the District, the courts there were the proper tribunals to act for her protection. See Hartman v. Henry, 280 Mo. 478, 217 S.W. 987; Calkins v. Calkins, 217 Ala. 378, 115 So. 866.

The same rule has been applied in other jurisdictions. A change of residence of the child has been held generally to be a sufficient change of circumstances to re-open the matter and give the courts of the state of new residence power to re-examine the needs of the child. Ex parte Erving, 109 N.J.Eq. 294, 301, 157 A. 161, 164; Milner v. Gatlin, 139 Ga. 109, 113, 76 S.E. 860, 862; Steele v. Steele, 152 Miss. 365, 118 So. 721; In re Alderman, 157 N.C. 507, 73 S.E. 126, 39 L.R.A.,N.S., 988; Griffin v. Griffin, 95 Or. 78, 84, 187 P. 598, 601; Barnes v. Lee, 128 Or. 655, 275 P. 661; In re Groves, 109 Wash. 112, 114, 186 P. 300; 80 U. of Pa.L.Rev. 712; 81 U. of Pa.L. Rev. 970. Where, however, the residence of the child remains in the state first taking jurisdiction, it is clear that the courts of sister states will recognize the conclusive character of the determination made in that state.

The only changes in circumstances which have occurred in the instant case are that: (1) The child is approximately three years older; (2) she is now attending school and her expenses have increased; (3) the income of her father, the appellant, has increased, making it possible for him to pay a larger amount toward her support; and (4) the residence of her father has been changed to the District of Columbia. The first three of these changes are exactly the kind of changes in circumstances which were probably and properly anticipated by the North Carolina court when it retained the cause for further orders. The fourth change is the exact one which makes necessary the rule requiring that courts of other jurisdictions must not interfere with the matter in litigation so long as it is in the control of the court which first took jurisdiction.

There is nothing in the circumstances as they now exist which calls for the intervention of the District of Columbia court. The child does not live in the District. On the contrary, she states in her bill that she is domiciled and resides in North Carolina. There is no question of the fitness of her mother to act as her custodian and no request is made for change in custody; in fact, the mother appears herein as next friend and as the initiator of the present proceeding. There is nothing which suggests that the child is in danger of contamination, or that her welfare is threatened in any way, except as it may appear that her needs are greater and that her father should increase his contribution to her support. There is nothing to suggest that this cannot be achieved, if necessary and proper, by petition to the North Carolina court, or that the appellant will fail, in any measure, to comply with a proper order of that court.

Since the order must, therefore, be reversed with instructions to grant defendant's motion to dismiss the bill, we find it unnecessary to pass upon other contentions raised by him.

Reversed and remanded, with instructions to dismiss the bill.